**Royce L. JOHNSON, Appellant,**

v.

**TEXAS ANIMAL HEALTH COMMISSION,
Appellee.**

No. 1133.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 19, 1975.

Don A. Weitinger, Weitinger, Steelhammer & Tucker, Houston, for appellant.

John L. Hill, Atty. Gen., State of Texas, Robert W. Gauss, Austin, for appellee.

COULSON, Justice.

The appellant, Royce L. Johnson (hereafter Johnson), has appealed from an order entered on November 4, 1974, granting a mandatory injunction upon the motion of the appellee, the Texas Animal Health Commission (hereafter the Commission).

Johnson owns a herd of cattle in Chambers County, Texas. By proclamation dated April 14, 1966, John Connally, as Governor of the State of Texas, designated Chambers County a "Type II" brucellosis control area. Under the provisions of Vernon's Tex.Rev.Civ.Stat.Ann. art. 7014f–1, § 23A(9) (1960), the Texas Animal Health Commission is required to conduct tests from time to time on the cattle in the area and to enforce rules and regulations necessary to qualify the county as a "modified certified brucellosis free area" as described under regulations of the United States Department of Agriculture.

The Commission first tested the Johnson herd on September 18, 1970. That test of 159 head of cattle revealed 15 "reactor" animals infected with brucellosis. Johnson requested that the Commission retest 15 "reactors". The retesting of the 15 "reactors" was performed on October 18, 1970. That test resulted in 14 positive reactions, indicating that at least 14 animals in the herd were infected with brucellosis. Under the provisions of Article 7014f–1, § 23A(9), the Commission is required, within forty-eight hours of the completion of the test establishing that an animal is infected with brucellosis, to brand the animal with the letter "B" on the left jaw. The branded animal is required to be disposed of or slaughtered within fifteen days. Upon discovering a herd of cattle with positive reactors, the Commission must pursue a follow-up testing program designed to eliminate all animals carrying the brucellosis disease. In the case before this Court, the 14 head of cattle in the Johnson herd, identified as being carriers of the brucellosis disease, were neither branded nor disposed of as required by statute.

This suit was instituted on April 13, 1973, by the Commission against Johnson. The Commission requested the court to enter an order requiring Johnson to permit representatives of the Commission to enter upon his property for the purpose of retesting the herd and to brand and dispose of animals carrying brucellosis.

During a hearing before the court, held on August 7, 1974, evidence was presented establishing that subsequent to the retesting of the cattle on October 18, 1970, and up to the day of the hearing, Johnson had refused to permit representatives of the Commission to enter onto his property to brand and to dispose of the cattle infected with brucellosis as required by statute.

On August 9, 1974, the trial court entered an order directing Johnson to comply with the provisions of Article 7014f–1 by making his livestock available for testing; ordering that representatives of the Commission be allowed to brand any animal infected with brucellosis; and instructing that all infected animals in the herd be disposed of in compliance with the statute. No appeal was perfected from the order entered on August 9, 1974.

Thereafter the trial court held show cause hearings on September 23, and November 4, 1974, to determine if Johnson was in contempt for failing to obey the provisions of the order entered on August 9, 1974. At the hearing on September 23, 1974, the testimony disclosed that on August 22, 1974, representatives of the Commission were allowed to enter Johnson's property and proceeded to take blood samples from some of Johnson's cattle. The Commission utilized the facilities made available to them by Johnson. After the testing began on August 22, 1974, the representatives of the Commission determined that the facilities provided by Johnson were inadequate and unsafe, and the tests were discontinued after only 30 animals had been tested. The Commission thereafter filed a motion requesting the court to find Johnson in contempt of the order entered on August 9, 1974, contending that Johnson failed to provide adequate facilities for testing his herd.

Following the contempt hearing, the trial court entered a second order, dated November 4, 1974, granting the Commission a mandatory injunction. More than thirty days had passed since the court had entered its original order on August 9, 1974. The order entered on November 4, 1974, granting the mandatory injunction required that Johnson construct cattle pens as specifically described in the order, and that the Johnson herd should be tested beginning on December 16, 1974. Johnson perfected his appeal from the mandatory injunction set out in the order of November 4, 1974.

After the December 16, 1974, test date, and while this appeal was pending, the Commission filed in the trial court a second motion for contempt against Johnson.

The trial court set a hearing on the second motion for contempt for February 7, 1975. At the hearing before the trial court on the second motion for contempt, the Commission produced evidence that Johnson had constructed the pens and facilities in literal compliance with the order entered by the court on November 4, 1974, but that the pens and facilities as constructed by Johnson were inadequate to test the cattle for brucellosis pursuant to the statute. It was also disclosed that representatives of the United States Department of Labor Occupational Safety and Health Administration, and the Texas Occupational Safety Administration were present during the testing on December 16, 1974. It was determined that the conditions presented by the facilities were unsafe for the cattle and the representatives of the Commission, and the tests were interrupted.

At the conclusion of the hearing on February 7, 1975, the trial court entered a third order granting a mandatory injunction and set the testing date for the Johnson herd of cattle to begin on March 24, 1975. Johnson has filed with this Court an application for temporary injunction or writ of prohibition. He seeks to prevent the testing of his cattle on March 24, 1975, pursuant to the order entered by the trial court following the hearing on February 7, 1975, and to enjoin further testing of his herd pending this appeal.

■ Neither party has filed a brief in this Court. The order entered on November 4, 1974, from which appeal has been perfected is not interlocutory in nature. In reviewing a case in which no briefs have been filed, the Court will review the record for fundamental error. Texas Rules of Civil Procedure, rules 414, 415; Weaver v. Ham, 429 S.W.2d 687 (Tex. Civ.App.–Dallas 1968, no writ); Richardson v. McIntyre, 429 S.W.2d 526 (Tex. Civ.App.–Fort Worth 1968, no writ).

■ The order entered by the trial court on August 9, 1974, and the order entered by the trial court on November 4, 1974, were final orders. They mandated that the parties take certain affirmative steps to comply with Article 7014f–1. The mandatory injunctions entered by the court granted all of the relief requested by the Texas Animal Health Commission in its original petition. The orders of the trial court entered on August 9, 1974, and November 4, 1974, provide that representatives of the Commission be admitted onto the property of Johnson for the purpose of testing his herd of cattle for brucellosis. The orders further provide for a comprehensive and continuing testing program, the branding and disposal of all infected animals, and the ultimate attainment of completely negative herd tests.

The orders will result in a complete resolution of the rights of the parties under Article 7014f–1 if said orders are complied with by the parties in every detail. When a negative herd test is attained, the parties will have fully complied with the statute and there will no longer be a necessity for the parties to utilize the judicial system. Although the order of August 9, 1974, was a final appealable order, the trial court properly retained continuing jurisdiction. Inasmuch as the orders deal with a continuing situation, the trial court retained the power to alter or modify its final order upon a showing of changed circumstances. Patton v. Nicholas, 154 Tex. 385, 279 S.W. 2d 848, 857 (1955); Fuller v. Walter E. Heller & Company, 483 S.W.2d 348, 351 (Tex.Civ.App.–Dallas 1972, no writ); Carleton v. Dierks, 203 S.W.2d 552, 557 (Tex. Civ.App.–Austin 1947, writ ref'd n.r.e.).

■ After full review of the record, we do not find fundamental error in the judgment entered November 4, 1974. Gluck v. Texas Animal Health Commission, 501 S. W.2d 412 (Tex.Civ.App.–San Antonio 1973, writ ref'd n.r.e.). The Texas Animal Health Commission fulfilled all statutory requirements and pursued all administrative remedies prior to institution of this judicial proceeding seeking a mandatory injunction. This case differs from the situation existing in Lloyd A. Fry Roofing

Company v. State, 516 S.W.2d 430 (Tex. Civ.App.–Amarillo 1974, no writ), as in the *Fry* case, the administrative remedies had not been exhausted prior to seeking judicial relief.

The motion by relator, Royce L. Johnson, seeking either a temporary injunction or a writ of prohibition is made moot by the disposition made of the principal case.

Affirmed.